IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| IDAHO POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 07-730<br>(Judge Lettow) |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Rule 16 and Appendix A of the Rules of the United States Court of Federal Claims, the parties, by their representative attorneys, respectfully submit this Joint Preliminary Status Report:

**a. Does the Court have jurisdiction over the action?**

The plaintiff states that the Court has jurisdiction to consider and decide this action pursuant to 28 U.S.C. 1491(a)(1). At this time, the defendant is unaware of any reason why the Court would not possess jurisdiction.

**b. Should the case be consolidated with any other case?**

The parties agree that this case should not be consolidated with any other case.

**c. Should the trial of liability and damages be bifurcated?**

The parties do not believe that bifurcation is necessary in this case.

**d. Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal?**

The parties believe that the Court should consider deferring proceedings in this litigation. This case has numerous factual issues in common with Idaho Power Company v. United States, Case No. 07-443-S-LMB, filed in the United States District Court for the District of Idaho, including whether the United States failed to fulfill its obligations under a contract dated June 15,

1923, between Idaho Power Company ("Idaho Power") and the United States ("1923 Contract"). Idaho Power Company seeks damages for this claimed breach in this litigation, and seeks preliminary and permanent injunctive relief for the alleged breach in the United States District Court action. In light of the numerous factual issues the two cases have in common, there may be a risk of potentially inconsistent rulings in the two different venues.

The United States believes deferral of the proceedings in this litigation may also be warranted by related claims pending in certain actions before the Snake River Basin Adjudication court ("SRBA Court"), a special district court established by the State of Idaho to adjudicate fully the rights to waters of the Snake River. Specifically, the United States believes that claims made by both the United States and Idaho Power for state water rights to water stored at American Falls Reservoir in case numbers 01-2064, 01-10485, 01-10486, and 01-10487; case number 92-26 involving subordination of power rights; and case number 92-23 involving the Swan Falls Dam may bear on the rights asserted in this case. The United States believes that, if it appears that any of these actions will not be adjudicated prior to trial on the present case, it may seek to suspend proceedings in this case to avoid results that may potentially be inconsistent with the SRBA Court.

Idaho Power disputes that there are common issues in this litigation and all of the SRBA Court proceedings listed above. Moreover, if there are common issues, and if it appears that these SRBA actions will not be adjudicated prior to trial on the present case, Idaho Power will likely seek to suspend proceedings in the SRBA Court to avoid results that may potentially be inconsistent with the determination of federal questions in this case. Idaho Power believes resolution of the issues common to this litigation and the SRBA proceedings should be resolved

by a federal court since the fundamental issue concerns interpretation of the 1923 Contract executed by the United States and Idaho Power.

**e. Will a remand or suspension be sought?**

The parties do not believe that remand or suspension will be sought.

**f. Will additional parties be joined?**

The parties do not anticipate that additional parties will be joined.

**g. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56, and, if so, what is the proposed schedule for the intended filing?**

Plaintiff believes that it may file a motion pursuant to RCFC 56 on some of the issues presented here, but will need to undertake discovery before filing such a motion. Defendant has not yet decided whether it will file a motion pursuant to RCFC 12(b), 12(c) or 56.

**h. What are the relevant issues?**

1. Plaintiff's Statement Of The Relevant Issues

This is a dispute between plaintiff Idaho Power and the United States through the Bureau of Reclamation, an agency of the United States Department of the Interior, regarding release of water from the American Falls Dam, pursuant to the 1923 contract Between the United States and the Idaho Power Company ("1923 Contract" or "Contract"). At issue is whether, under the 1923 Contract, the United States is currently obligated to provide water from the American Falls Reservoir annually and, if so, whether it has satisfied this obligation.

Under the 1923 Contract, Idaho Power conveyed its property and facilities at American Falls (except for the East Side generating station) to the United States. Idaho Power and the United States also agreed on their respective water rights, and the limitations on the use of those water rights. Idaho Power contractually reserved, and the United States recognized, Idaho Power's existing water rights and appropriations, including Idaho Power's claim for 300,000

acre-feet of storage at American Falls. The 1923 Contract also provided Idaho Power with storage capacity in American Falls Reservoir for the purpose of regulating and controlling this 300,000 acre-feet of water. Under the Contract, Idaho Power had the right to demand the turning out of 255,000 acre-feet of that water from American Falls between October 1 and June 10.

The United States has confirmed its obligations to Idaho Power under the 1923 Contract, and this Contract remains in effect today. In 1973, Congress enacted Public Law 93-206, which provided for the reconstruction of American Falls Dam to address safety issues, and the execution of new spaceholder contracts in conjunction with reconstruction of the dam. The legislation expressly provided that it constituted a reaffirmation of existing contract rights between the United States and spaceholders in American Falls Reservoir, and that new contracts must be consistent with the terms of existing contracts. Specifically, PL 93-206 provided: "Replacement of the existing dam . . . shall in no way alter or change the present proportionate storage rights of present spaceholders in the American Falls Reservoir and **shall constitute a reaffirmation of existing contract rights** between the Secretary and the spaceholders except as otherwise provided in this Act." (Emphasis added.)

Pursuant to this legislative requirement, Idaho Power entered into a 1976 Spaceholder Contract with the United States and the American Falls Reservoir District. The basic purpose of the 1976 Spaceholder Contract was to provide for Idaho Power's repayment of its proportionate share of the costs of financing, constructing, and operating and maintaining the replacement American Falls Dam. At the same time, Idaho Power entered into a 1976 Falling Water Contract with American Falls Reservoir District, in which the United States granted to Idaho Power the right to utilize water released from the American Falls replacement dam for irrigation and incidental purposes for power generation at the replacement dam's powerplant, in return for

payments by Idaho Power to the District. These contracts specifically reference and do not modify the Company's rights under the 1923 Contract. Indeed, even if the contracts did somehow modify the 1923 Contract, they likely would not be enforceable because they would be contrary to the statute authorizing reconstruction of the dam.

The United States appears to be arguing that the changing hydrology of the Snake River requires a unilateral modification of its obligations under the 1923 Contract, because it asserts that at least since the 1970s there hasn't consistently been enough flow of water between the end of one irrigation season and the beginning of the next to guarantee both a full reservoir for irrigation and sufficient water for winter power flow. The United States also claims that its obligations under the Contract have been altered by construction of the Palisades Dam on the Snake River near the Wyoming border, by reservoirs at Island Park, Grassy Lake, and Ririe, and by the expansion of agricultural acreage using water from these reservoirs.

As an initial matter, the United States's obligations under the 1923 Contract were affirmed by Congress through Public Law 93-206 in 1973 and by the United States in the 1976 contracts with Idaho Power. Thus, even when the government claims a water shortage became evident, its contractual obligations to Idaho Power were confirmed by Congress and by the United States government.

Moreover, the United States has done much to bring about the alleged drought conditions it now complains about. The United States claims that the construction of Palisades Dam and the reservoirs at Island Park, Grassy Lake, and Ririe have affected the United States' pre-existing obligations under the 1923 Contract. But these projects were all constructed and operated by the BOR, and the United States cannot use its unilateral decisions – and the conditions they may have created – as grounds for modifying its contractual obligations. Similarly, BOR's

determinations to store water in these other reservoirs in lieu of storage in American Falls Reservoir should not affect its contractual obligations to Idaho Power. And finally, BOR should not be permitted to complain that agricultural acreage has expanded, increasing the amount of water needed to accommodate irrigation demands. BOR alone determines who may contract for storage space in its reservoirs and the amount of storage space for which they may contract. While agricultural acreage has no doubt expanded in Idaho during the past eighty years, BOR is uniquely situated to determine how the water in its reservoirs may be used and to take whatever action it needs to in order to honor its pre-existing contractual obligations. Again, BOR should not now be able to use events within its control to preclude Idaho Power from seeking enforcement of its rights under the 1923 Contract.

In addition to its claim that the United States breached the 1923 Contract, Idaho Power has also brought in this litigation a breach of trust claim against BOR. Idaho Power is the beneficiary of that trust, and the trust corpus is the Idaho Power's water rights. Because BOR’s releases of water from American Falls are not resulting in the Company receiving water at its downstream power plants in the amounts provided for under the 1923 Contract, BOR has either repudiated the trust or is allowing the trust corpus to be taken by others.

**Plaintiff's Issues:**

1. Does the United States have an annual contractual obligation to provide between October 1 and June 10 of each contract year, in addition to releases from primary storage capacity, flows of water from Idaho Power's secondary storage capacity in American Falls Reservoir at the rates of flow specified in the 1923 Contract, so that Idaho Power may put such water to beneficial use at its downstream hydropower facilities on the Snake River?

2. Has the United States failed to provide the annual releases of water from American Falls Reservoir required to be released under the 1923 Contract during each contract year?

3. Has the United States breached the 1923 Contract by failing to provide the contractually-mandated annual releases of water from American Falls Reservoir under the 1923 Contract?

4. Alternatively, does the United States have a fiduciary duty as trustee to Idaho Power to provide water pursuant to the 1923 Contract, on the basis that BOR holds in trust the subject water rights claimed by Idaho Power, to the extent that Idaho Power does not own such rights in their entirety?

5. Has the United States repudiated the trust and breached its fiduciary obligations as trustee by failing to provide the contractually mandated releases of water from American Falls Reservoir under the 1923 Contract?

6. Has Idaho Power suffered damages as a result of lost hydropower generation attributable to the United States' failure to release water from

American Falls Reservoir under the 1923 Contract, and if so, what is the amount of such damages?

2. Defendant's Statement of the Relevant Issues

This is a dispute between plaintiff, Idaho Power, and the United States through the Bureau of Land Reclamation, an agency of the United States Department of the Interior, regarding release of water from the American Falls Dam, pursuant to the 1923 Contract. At issue is whether, under the disputed contract provisions, the United States is currently obligated to provide water from the American Falls Reservoir annually during the period between October and June (i.e., generally outside the normal irrigation season). Additionally at issue is whether the 1923 Contract created a trust relationship between the United States and Idaho Power.

Special legislation and new contracts executed in 1976 resulted in the construction of a new American Falls Dam in 1978. The United States asserts that the 1976 contracts and legislative history confirmed the Government's view that there was then no obligation under the 1923 contract provisions. Alternately, the 1976 contracts served to modify the 1923 Contract in recognition of the changing and increasing demands for water from the American Falls Reservoir, constituting an accord and satisfaction of the parties' contractual rights. The United States also asserts defenses of changed circumstances, impossibility and laches.

The 1923 Contract was based on the parties' assumption that the hydrology of the Snake River would permit enough flow of water between the end of one irrigation season and the beginning of the next to guarantee both a full reservoir for irrigation and sufficient water for winter power flow. By 1976, it was apparent that this assumption was incorrect, especially in years of extreme drought or other organic conditions that have an impact on the total amount of water in the Snake River. Additionally, after 1976, the Idaho state watermaster controlled a

downstream portion of the Snake River, thereby making it impossible for defendant to protect the amount of flow available for plaintiff.

Moreover, the parties' contractual rights have been affected by construction of the Palisades Dam on the Snake River near the Wyoming border as well as reservoirs at Island Park, Grassy Lake, and Ririe, which were all constructed after 1923 and now capture much of the water that the 1923 planners assumed would flow into or past the American Falls Reservoir. Also, in 1992, Idaho Power added a power plant on the Snake River at Milner Dam, which is between the American Falls Reservoir and the 1923 measuring point at Twin Falls. State law and policy limit flows past Milner Dam in ways unforeseen in 1923, but Idaho Power, now captures hydropower at that facility, thus potentially mitigating any downstream losses.

Additionally, periods of drought have recurred with unforeseen regularity and intensity. Agricultural acreage has expanded, increasing the amounts of water needed to accommodate irrigation demands. Irrigation practices themselves have changed from flood irrigation to sprinkler systems, which produce less run-off water. Additionally, power consumption patterns have changed with the development of air conditioning. Formerly, peak demand periods occurred in the winter to provide light and heat. Now, peak demand periods occur in the summer months to provide cooling. Idaho Power's claims ignore both the 1976 agreement and the numerous changed circumstances that materially alter the assumptions on which the parties' 1923 agreement was based, and preclude Idaho Power from seeking enforcement of its purported rights under the 1923 Contract.

Finally, the 1923 Contract provisions did not purport to create an automatic obligation, rather, water delivers were to be requested annually. Idaho Power did not make such a request between 1976 and 2001. Even if the 2001 request could be considered valid under the 1923

contract, the long delay in asserting these rights caused harm to Defendants and therefore the claims should be barred under the doctrine of laches.

**Defendant's Issues:**

(1) Does the 1976 Contract constitute an accord and satisfaction of the parties' respective rights under the 1923 Contract?

(2) Are plaintiffs' claims barred by the doctrine of changed circumstances?

(3) Are plaintiffs' claims barred by the doctrine of impossibility?

(4) Are plaintiffs' claims barred by the doctrine of laches?

(5) Does Idaho Power have rights to water from the American Falls Reservoir that are enforceable against the United States through the 1923 Contract?

(6) If so, is the United States the trustee of Idaho Power's rights, such that the United States owes Idaho Power fiduciary duty with respect to those rights?

(7) If the United States has a fiduciary duty to Idaho Power with respect to water rights, has the United States breached that duty?

(8) Has Idaho Power lost hydropower generation capacity based on the amounts of water released by the United States from the American Falls Dam?

(9) If so, what is the measure of Idaho Power's damages?

**i. What is the likelihood of settlement?**

The parties have engaged in limited settlement discussions. The parties believe that the complexity of the issues and the influence of outside parties and other factors reduces the possibility of settlement.

**j. Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling? What is the requested place of trial?**

The parties believe that it will be necessary to take discovery in order to determine if there are disputed issues of material fact requiring a trial. The parties do not request expedited trial scheduling. The United States believes that any trial in this case should be held in Boise, Idaho.

**k. Are there special issues regarding case management needs?**

The parties are currently unaware of any special issues regarding case management needs.

**l. Is there any other information of which the Court should be aware of at this time?**

Plaintiff filed a related action to this case on October 16, 2007 in the United States District Court for the District of Idaho, Idaho Power Co. v. United States, No. 07-443. This case seeks different relief concerning the United States' obligations under the 1923 Contract. Please see Section 1(d), above.

**m. Discovery plan:**

If these proceedings are not deferred, as discussed above, the parties agree to the following discovery plan:

(1) Discovery will be needed on the following subjects: allegations in the Complaint and defenses available to defendants.

(2) All discovery commenced in time to be completed by May 1, 2009.

(3) Maximum of 25 interrogatories by each party to any other party. Responses due 30 days after service.

(4) Maximum of 10 depositions by plaintiff and 10 by defendant. Each deposition is limited to maximum of 7 hours.

(5) Reports from retained experts under Rule 26(a)(2) due:
  i. from plaintiff by December 1, 2008.
  ii. from defendant by January 16, 2009.
  iii. rebuttal experts by March 1, 2009.

(6) Depositions of experts completed by April 1, 2009.

(7) The parties are under a continuing obligation under Rule 26(e) to update all discovery responses timely and in good faith. Discovery requests shall be supplemented and fully amended no later than 30 days before the end of discovery.

**n. Other Items:**

(1) The parties do not request a conference with the Court before entry of the scheduling order.

(2) The Government proposes reserving the setting of a pre-trial date until after the resolution of all dispositive motions. At that time, if necessary, the parties shall contact the Court to schedule a pre-trial conference.

(3) All potentially dispositive motions should be filed on or before July 1, 2009.

(4) Final lists of witnesses and exhibits under Rule 26(a)(3) should be due, if necessary, no later than 30 days after resolution of all dispositive motions.

(5) Parties should have 30 days after service of final lists of witnesses and exhibits to list objections under Rule 26(a)(3).

(6) Time of trial shall be evaluated at the pre-trial conference.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Mark J. Mathews
JAMES S. LOCHHEAD
MICHAEL A. GHELETA
MARK J. MATHEWS
Brownstein Hyatt Farber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202
Tele: (303) 223-1100
Fax: (303) 223-1111

Attorneys for Plaintiff

s/ Joan M. Stentiford
JOAN M. STENTIFORD
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 616-0341
Fax: (202) 514-8624

Attorneys for Defendant

8607\5\1143262.1